UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ROZANNA M. MENDOZA,

      Plaintiff,

v.                                                                                  No. SA:18-cv-867-JKP

ALAMO AREA COUNCIL
OF GOVERNMENTS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant Alamo Area Council of Governments (AACOG)'s Motion for Summary Judgment*, ECF No. 21, to which Plaintiff responded, ECF No. 23, and Defendant replied, ECF No. 24. Upon consideration of the briefs, evidence, and the arguments presented at a hearing held November 19, 2020, the Court concludes AACOG's Motion for Summary Judgment shall be GRANTED in part and DENIED in part.

### I. BACKGROUND

Rozanna M. Mendoza ("Plaintiff" or "Ms. Mendoza") joined the Alamo Regional Transit Program ("ART"), which is part of the Alamo Area Council of Governments ("Defendant" or "AACOG"), as a Transportation Manager on March 21, 2016. As Transportation Manager, Ms. Mendoza supervised approximately twelve employees and earned an annual salary of approximately $60,000. After a six-month probationary period, Ms. Mendoza was to receive medical insurance, paid leave, retirement benefits, and a salary increase.

Accepted as true and viewed in the light most favorable to her, Plaintiff alleges the following. *See generally* Pl.'s Amended Compl. (ECF No. 2); Pl.'s Decl. (ECF No. 23-5). On June 5, 2016, Ms. Mendoza filed an internal workplace harassment complaint against her

supervisor. Ms. Mendoza's internal complaint alleged that her supervisor referred to women, Mexican Americans, and African Americans as "stupid." The internal complaint further alleged that on June 3, 2016, the supervisor was verbally abusive to Ms. Mendoza, harassed her, and physically threatened her in an elevator. Ms. Mendoza also alleged that her supervisor verbally assaulted her a second time on that day, which was witnessed by three employees. Fearful of her supervisor's violent tendencies and proclivity for workplace violence, Ms. Mendoza asked for permission to work in another office, or to work from home. Ms. Mendoza's complaint was the third such complaint filed against this supervisor, but AACOG did nothing to stop his abusive behavior, did not discipline him, and did not respond in writing to Ms. Mendoza.

On June 13, 2016, without warning or explanation, AACOG extended Ms. Mendoza's probationary period, effectively depriving her of medical insurance, paid leave, retirement benefits, and a raise. The delay in receiving medical benefits was particularly worrisome to Ms. Mendoza because she was paying for insurance through COBRA. Ms. Mendoza believed her probationary period had been unfairly and wrongly extended in retaliation for filing her internal complaint. She shared this concern with Human Resources ("HR") several times to no avail. Ms. Mendoza was so unhappy with the discrimination, harassment, and protection of a bully predator that she applied for a demotion to a position that paid a substantially lower salary in order to escape the hostile environment. She was not transferred to that position.

In August 2016, Ms. Mendoza received a letter from the Texas Department of Transportation ("TxDOT") stating that AACOG was in violation of state and federal law because it did not have an Equal Employment Opportunity Commission ("EEOC") plan. Ms. Mendoza alerted HR Director Deedra Johnson ("Johnson") and received a defensive, argumentative, and deflective response. Senior Director of Strategic Partnerships Tim Trevino ("Trevino") directed

Ms. Mendoza to work with Johnson to develop the EEOC plan. Ms. Mendoza did so and submitted the plan to TxDOT in December 2016. TxDOT approved the plan conditionally due to ART/AACOG's prior noncompliance. In March 2017, Ms. Mendoza received a second letter from TxDOT alerting AACOG that according to TxDOT records AACOG did not have a Title VII civil rights plan in place. In response, Ms. Mendoza drafted AACOG's Title VII plan and submitted it to Sean Scott ("Scott"), newly appointed Alamo Regional Transit Director.

At the end of August 2016, Ms. Mendoza told Trevino she believed her employee benefits and raise were being wrongfully withheld. In response, Trevino authorized the benefits, but denied the ten percent raise Plaintiff was promised when she was hired. From October 2016 through March 2017, Ms. Mendoza complained to her new supervisor and to Trevino that AACOG was ignoring its EEOC policies by hiring new employees without job postings or interviews. When jobs were posted, the qualifications were watered-down to fit pre-selected candidates. This often resulted in lower qualified Anglo and African American male applicants receiving better positions and higher compensation than Mexican American female applicants.

In March 2017, Trevino accused Ms. Mendoza of engaging in grant mismanagement and for failing to address reimbursement issues. However, Ms. Mendoza was required to report any grant issues up her chain of command, which she did. Her superior did nothing. Trevino then blamed Ms. Mendoza for her supervisor's failure to address the issues.

On June 13, 2017, Ms. Mendoza received a "Final Employee Counseling Memo" (the "Memo"). The Memo accused her of failing two audits but audits were not within her job description or scope of responsibility. In response, Ms. Mendoza complained to Trevino about discriminatory treatment directed at her because she is a Mexican American female. Trevino did nothing to address or investigate Ms. Mendoza's complaint.

On the morning of June 14, 2017, Ms. Mendoza, under duress, tendered a letter of resignation to Scott, telling him she could no longer tolerate the harassment and discrimination she experienced at AACOG. Ms. Mendoza's resignation was also prompted by Scott informing her that AACOG's Executive Director ordered Trevino and Johnson to terminate her. Fearful of having a termination on her record—and after enduring months of harassment and discrimination—Ms. Mendoza felt she had no choice but to resign. She tendered a three-week notice of resignation, making her last day of work July 5, 2017. Instead, at the end of the workday, Johnson told Ms. Mendoza to gather her belongings, leave the premises, and not return.

On March 23, 2018, Ms. Mendoza filed a charge of discrimination against AACOG with the EEOC. On May 25, 2018, Ms. Mendoza received a dismissal and notice of rights. She filed this action on August 22, 2018, amending her complaint on August 30, 2018. The First Amended Original Complaint (ECF No. 2) is now the operative pleading. In that complaint, Plaintiff brings claims for discrimination based on sex and national origin and for retaliation, which she alleges was in response to the internal harassment complaint she filed against her supervisor. On January 6, 2020, Defendant filed the motion for summary judgment now before the Court. Having heard the arguments of the parties at a hearing convened November 19, 2020, the motion is ripe for ruling. Defendant moves for summary judgment on all of Plaintiff's claims.

## II. LEGAL STANDARDS

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249. A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. at 248. While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party has the burden to "demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law" to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 (stating that "a scintilla of evidence" is insufficient). Rather, the nonmoving party must identify specific facts that show a genuine dispute for trial. *Matsushita*, 475 U.S. at 587. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita*, 475 U.S. at 586-87).

**Title VII**

Title VII makes it unlawful for covered employers to discriminate against individuals with respect to their "terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Except as otherwise provided in this subchapter [(Subchapter VI of Title 42 of the United States Code, which encompasses all provisions of Title VII)], an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id*. § 2000e-2(m).

Title VII also prohibits employers from retaliating against an employee for (1) opposing any employment practice made unlawful by its provisions and (2) making a charge, testifying, assisting, or participating "in any manner in an investigation, proceeding, or hearing" under its provisions. *Id*. § 2000e-3(a). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiffs may prove Title VII claims of "intentional discrimination or retaliation either

6

by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *accord Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018) (discrimination case). When analyzing Title VII claims of disparate or discriminatory treatment, courts utilize the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) unless there is direct evidence of discrimination. *See Stroy*, 896 F.3d at 698. That same "framework applies to Title VII retaliation claims brought under a pretext theory." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *accord Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). Not only does this framework apply at trial, *see McDonnell*, 411 U.S. at 802, but it also applies on summary judgment, *see Vaughn v. Woodforest Bank*, 665 F.3d 632, 635-36 (5th Cir. 2011).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015) (per curiam) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). "If an inference is required for the evidence to be probative . . . the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002).

Under the *McDonnel Douglas* framework, plaintiffs must first establish "by the preponderance of the evidence a prima facie case of discrimination," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981), or retaliation, *McCoy*, 492 F.3d at 556-57. Carrying this initial burden creates an inference or presumption of discrimination, *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978), or retaliation, *see Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). The prima facie case is flexible and necessarily varies in Title VII cases depending on the

particular circumstances. *Burdine*, 450 U.S. at 253 n.6.

In general, to establish a prima facie case of discrimination, the plaintiff must show (1) membership in a protected group; (2) "qualified for the position at issue"; (3) an "adverse employment action by the employer"; and (4) being replaced by someone outside the protected group or being "treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

The prima facie case in the retaliation context requires the plaintiff to establish: (1) participation "in an activity protected by Title VII"; (2) "an adverse employment action" by the employer; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-57; *accord Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element requires only that the plaintiff "demonstrate a 'causal connection' between [the] protected activity and [the adverse action], even if [the plaintiff] must ultimately demonstrate but-for causation at the pretext stage of the *McDonnell Douglas* framework." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019); *accord Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020); *but see*, *Harville v. City of Houston, Miss.*, 945 F.3d 870, 879 (5th Cir. 2019) (identifying "a but-for causal connection" in the prima facie case).[2]

Once the plaintiff establishes the prima facie case, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 557; *accord Wheat*, 811 F.3d at 710 (retaliation claim). This "burden is only

---

2 The Court follows *Garcia*. Not only does earlier precedent apply in general, *see Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 576 (W.D. Tex. 2019), but *Garcia* also thoroughly discusses the issue and relies on specific precedent of the Fifth Circuit.

one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557; *accord Burdine*, 450 U. S. at 254-55; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019), *as revised* (Dec. 10, 2019) and *as revised* (Dec. 23, 2019) (citing *Reeves*, 530 U.S. at 142).

If the employer satisfies its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557. Plaintiffs have two alternatives to refute the employer's articulated reason by offering evidence sufficient to create a genuine dispute of material fact. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). Through the mixed-motives alternative, they must show "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id*. Through the pretext alternative, they must show "that the defendant's reason is not true, but is instead a pretext for discrimination." *Id*.

### III. DISCUSSION

#### A. Discrimination

#### 1. Prima Facie Case

Plaintiff contends she can establish a prima facie case of discrimination based on sex and national origin because she is a Mexican American female; she was qualified for her position as Transportation Manager for ART; she was terminated or constructively discharged; and she was replaced by someone outside her protected group—specifically, an African American male and a white Anglo male. *See generally* ECF Nos. 23-1; 23-5. The primary disagreement regarding Plaintiff's prima facie case is whether she suffered an adverse employment action. Defendant argues Plaintiff resigned. Plaintiff responds she was terminated or constructively discharged.

## 2. Legitimate Nondiscriminatory Reason

Without conceding its position that Plaintiff cannot establish a prima facie case of discrimination because she resigned, Defendant agreed to argue Plaintiff's claims of sex and national origin discrimination beginning with its burden to articulate a legitimate, nondiscriminatory reason for its alleged adverse employment action—Plaintiff's termination.[3] This "burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557.

Defendant proffers evidence that Plaintiff was twice counseled about her poor performance. It argues that each of these "counseling sessions" provides sufficient evidence of poor performance to justify termination. *See* ECF Nos. 21 at 3; 21-1 at 5-9 (June 2017 Memo); 21-2 at 4 (March 2017 counseling). The Memo states that Trevino counseled Plaintiff on March 14, 2017, for (1) failing to observe deadlines resulting in AACOG having to return $18,750 in unused grant funds and (2) failing to "appropriately and timely elevate" certain issues resulting in termination of a grant before all work was completed, potentially impacting AACOG's "ability to secure future grants from this funding source." ECF No. 21-1 at 7.

The Memo also states that Plaintiff failed to adequately prepare for and manage TxDOT and VIA audits. The TxDOT audit was initially viewed as a success but this was only because the reviewers happened to randomly select completed files and two questions were answered dishonestly. *Id.* at 6. The VIA audit had to be rescheduled because the subject files were not complete. *Id.* at 6-7. The Memo further states that Plaintiff's job description included grant and funding oversight, responsibility for submission of reports to TxDOT, quality control, and

---

[3] For the purpose of this analysis, the Court assumes without deciding that Plaintiff was terminated.

supervision of the ART team responsible for the audits. *Id.* at 7. At oral argument, Defendant emphasized Ms. Mendoza's responsibilities as ART Transportation Manager. While the audits were team efforts, as the team leader, Ms. Mendoza was ultimately responsible for the results.

In sum, Defendant attributes the loss of $18,750 in grant funding, the termination of a grant prior to the completion of a project, and the audit failures to Ms. Mendoza's poor work performance. Thus, had AACOG terminated Ms. Mendoza it would have done so based upon these legitimate, nondiscriminatory reasons. The Court finds Defendant's proffered reasons are sufficient to meet its burden.

With Defendant's burden satisfied, Plaintiff must prove that the proffered reason is not true but is pretext for the discriminatory purpose. *McCoy*, 492 F.3d at 557. Plaintiff has two alternatives by which to do so. Through the mixed-motives alternative, she must show "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Rachid*, 376 F.3d at 312. Through the pretext alternative, she must show "that the defendant's reason is not true, but is instead a pretext for discrimination." *Id*. Under either alternative, Plaintiff must refute the employer's articulated reason by offering evidence sufficient to create a genuine dispute of material fact.

### 3. Pretext

Plaintiff argues the Memo falsely accuses her of failing the audits because this activity was neither within her job description nor her scope of responsibility. ECF No. 23 at 5. In support of her argument, Plaintiff points to her job description and her declaration. *See* ECF Nos. 23-3 at 22; 23-5. Plaintiff argues that while grant management was part of her duties, the audits were outside her ambit for two reasons. First, she was required to report all issues "up her chain of command," which she did, only to have her superior take "no action" and instead, resign.

Second, Plaintiff contends that the VIA audit was the responsibility of AACOG's Operations Manager. Accordingly, rather than pointing to any specific failure on her part, the Memo blames her for the failures of her male colleagues.

At the hearing, Plaintiff argued that her March 2017 complaint—that AACOG ignored its EEOC policies when it hired new employees without posting the jobs or conducting interviews—resulted in the March counseling session, inferring that she was counseled because she complained. However, Plaintiff did not dispute Defendant's arguments that failure to meet certain deadlines resulted in the return of approximately $18,750 in unused grant funds and failure to elevate issues resulted in TxDOT declining to extend a grant.

Plaintiff next argued that complaints she made in May—about not receiving the promised pay raise, the denial of her employment benefits, and AACOG's violations of EEOC policy—resulted in the June Memo, again inferring that she was counseled because she complained. Here too, Plaintiff did not dispute that VIA rescheduled the May audit due to incomplete files or that she was the audit team leader. Furthermore, Plaintiff did not contradict Defendant's assertions that she had management and oversight responsibility during the majority of the time period being audited; that she supervised the ART employee who was responsible for keeping the relevant files up-to-date and had twice counseled him for poor record keeping; and that because of this, she knew the files were incomplete.

The connection Plaintiff attempts to make between her complaints and counseling is too tenuous to conclude it is more likely than not that AACOG terminated her based on her national origin or sex. Plaintiff's "ultimate burden" depends on whether "the actual decisionmaker was motivated by [Plaintiff's sex or national origin] in taking the adverse employment action." *Turner*, 675 F.3d at 902. The only evidence of sex or national origin animus is alleged in

12

Plaintiff's June 2016 complaint against her supervisor. The problem with that evidence is that AACOG investigated the complaint, counseled the supervisor, and he separated from AACOG in July 2016. A defendant who has taken "prompt remedial action" that is "'reasonably calculated' to put an end to the harassment" may avoid Title VII liability. *Tucker v. UPS*, 734 F. App'x 937, 941-42 (5th Cir. 2018) (per curiam) (quoting *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir. 2014). The evidence shows that AACOG took prompt remedial action and Plaintiff's supervisor separated from AACOG shortly thereafter. Thus, this evidence does not create a genuine dispute with respect to Plaintiff's discrimination claims.

Plaintiff further argues that filing the sexual harassment complaint stigmatized her. She never got out of the shadow of that complaint—it was kryptonite. Every month that she did not receive her benefits and pay raise, Plaintiff felt it was because she filed the internal harassment complaint. When lesser-qualified men were hired over more-qualified women; when men were hired on what she believed was a crony system that violated EEOC policies, it was a personal affront to her both as a female and as the AACOG employee who had worked hard to develop the EEOC policies. The problem with this argument is that it requires the Court to engage in speculation.

Plaintiffs do not carry their ultimate burden when their presented evidence requires the Court to indulge in speculation. While inferences are permissible, *Reeves*, 530 U.S. at 147, a plaintiff must provide sufficient evidence upon which a reasonable trier of fact could conclude that the employer unlawfully discriminated. *Id*. at 148. Although Plaintiff disputes the truthfulness of Defendant's stated reason for termination, she has not provided sufficient evidence that the stated reason, even if untruthful, is a pretext for discrimination.

For these reasons, Plaintiff has not carried her burden to show that a discrimination claim

based on Plaintiff's sex or national origin should proceed to trial. Defendant is entitled to summary judgment on such claims.

## B. Retaliation

Under the *McDonnell Douglas* framework, a plaintiff makes a prima facie case of retaliation by showing: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Brown*, 969 F.3d at 577. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns. Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educ. Fund.*, 284 F.3d 642, 657 (5th Cir. 2002)).

To establish an adverse action in a retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Material" adversity must be more than trivial harm, and "petty slights or minor annoyances that often take place at work and that all employees experience" are not actionable. *Id.* "[A] 'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted). Causation at the prima facie stage can be established "simply by showing close enough timing" between the employee's protected activity and the adverse employment action. *Brown*, 969 F.3d at 577 (quoting *Garcia,* 938 F.3d at 243).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant employer

to proffer a legitimate non-discriminatory reason for the adverse employment action. *Burlington*, 548 U.S. at 68. If the employer defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual, which the plaintiff proves with a showing of but-for causation: that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Nassar*, 570 U.S. at 360.

To satisfy the initial burden of informing the court of the basis for its summary judgment motion, Defendant asserts that Plaintiff cannot establish any element of a prima facie case for retaliation. ECF No. 21 at 7.

**1. Protected Activity**

Plaintiff's evidence shows that she engaged in protected activity when she filed an internal harassment complaint on June 3, 2016. ECF Nos. 23-2 at 2, 4, 34; 23-4 at 3-4.

**2. Adverse Employment Action**

Plaintiff alleges the adverse employment action she suffered was the extension of her probationary period. Plaintiff's summary judgment evidence shows that the extension of her probationary period meant that Plaintiff would not receive a variety of benefits for an additional sixty days beyond her original probationary period. ECF No. 23 at 3; 23-6; 23-7.

The Supreme Court cautions that Title VII's antiretaliation "provision's standard for judging harm must be objective, so as to avoid the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011) (citing *Burlington*, 548 U.S. at 68-69). Therefore, the Court must consider whether an extension of a probationary period in the context presented would dissuade a reasonable employee from making or supporting a charge of discrimination. The Supreme Court in *Burlington* explained that "[t]he antiretaliation provision protects an

individual not from all retaliation, but from retaliation that produces an injury or harm." 548 U.S. at 67. Importantly, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

Plaintiff's evidence shows that the extension of her probationary period resulted in the denial of benefits, including health insurance. This was particularly significant to Plaintiff because she was then paying for health insurance out-of-pocket through COBRA, which was very expensive for her. ECF Nos. 23-5 at 2, par. 7; 23-7. The extension of her probationary period also resulted in the denial of a ten percent pay raise. This evidence supports a finding that the extension of Plaintiff's probationary period was actionable "significant" harm rather than non-actionable "trivial" harm. *Burlington*, 548 U.S. at 69. Thus, the Court finds that Plaintiff has adequately alleged an adverse employment action.

### 3. Causation

Plaintiff alleges the extension of her probationary period occurred approximately ten days after she filed her internal harassment complaint. Causation at the prima facie stage may be made from close temporal proximity. *Brown*, 969 F.3d at 577. Upon the evidence presented, Plaintiff has established a prima facie case of retaliation. Having established a prima facie case, the burden shifts to Defendant to proffer a legitimate non-discriminatory reason for the adverse employment action.

### 4. Legitimate Non-Discriminatory Reason

Defendant's answer to Plaintiff's interrogatory number five states: "On June 15, 2016, an email was sent to Jeffrey Ganahl from HR Manager Deedra Johnson extending Rozanna Mendoza's probationary period [an] additional 60 days due to unsatisfactory work performance." ECF No. 23-4 at 6. However, in its entirety, the email from Johnson to Ganahl reads: "HR has

informed Ms. Mendoza that her probationary period has been extended an additional 60 days." In preparing for the hearing the Court found no evidence in the record to support Defendant's contention that Plaintiff's probationary period was extended due to poor work performance. ECF No. 21-1 at 27. When questioned by the Court, Defendant was unable to substantiate its contention that Plaintiff's probationary period was extended due to poor work performance.

Plaintiff attests and argues that no reason was given for the extension and that prior to the extension she had not received any written or verbal complaints about her job performance. ECF No. 23-5 at 2. Plaintiff further contends that prior to the extension of her probationary period she had received a favorable evaluation and maintained a "spotless" record. ECF No. 23-5, par. 5. When questioned by the Court, Defendant did not provide any additional facts or evidence with respect to this issue.

Because Defendant failed to proffer a legitimate non-discriminatory reason for extending Plaintiff's probationary period, summary judgment on Plaintiff's retaliation claim will be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion for summary judgment. On the facts and evidence presented, AACOG is entitled to summary judgment on Plaintiff's sex and national origin discrimination claims. Summary judgment is denied as to Plaintiff's retaliation claim.

Accordingly, it is hereby ORDERED *Defendant Alamo Area Council of Governments (AACOG)'s Motion for Summary Judgment* (ECF No. 21) is GRANTED IN PART and DENIED IN PART.

This matter is set for status conference **December 1, 2020 at 11:30 AM** via Zoom. Questions may be directed to Magda Muzza, Courtroom Deputy at (210) 244-5021 or

Magda_Muzza@txwd.uscourts.gov. Participants unfamiliar with Zoom should test the application prior to the hearing.

 It is so ORDERED this 25th day of November 2020.

_____<br>
JASON PULLIAM<br>
UNITED STATES DISTRICT JUDGE